FILED
United States Court of Appeals
Tenth Circuit

February 29, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ROLAND LORENZO MITCHELL,

        Defendant - Appellant.

No. 05-2052

---

**OPINION ON REMAND**

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-04-659-RB)**

---

Marc H. Robert, Assistant Federal Public Defender, Las Cruces, New Mexico, on the brief for Defendant-Appellant.

Larry Gomez, Acting United States Attorney, and Terri J. Abernathy, Assistant United States Attorney, Las Cruces, New Mexico, on the brief for Plaintiff-Appellee.

---

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction[1]

Roland Lorenzo Mitchell filed an untimely notice of appeal of his conviction for possession of marijuana with intent to distribute. This court dismissed his appeal, *sua sponte*, for lack of jurisdiction because Mitchell failed to comply with the time limitations of Federal Rule of Appellate Procedure 4(b). *United States v. Mitchell*, 464 F.3d 1149, 1149 (10th Cir. 2006). The Supreme Court vacated our decision and remanded for further consideration in light of *Bowles v. Russell*, 127 S. Ct. 2360, 2366 (2007) (holding the timeliness requirements in Fed. R. App. P. 4(a) are jurisdictional because they derive from a statute). *Mitchell v. United States*, 127 S. Ct. 2973, 2973 (2007). Upon further consideration, we reach the merits of Mitchell's appeal because the government forfeited its objection to the untimely notice of appeal and *sua sponte* dismissal under Rule 4(b) would be inappropriate.

## II. Background

Mitchell, a long haul truck driver, was arrested at the Eastbound Motor Transportation Division Port of Entry in Lordsburg, New Mexico.[2] Pursuant to

---

[1]After examining the supplemental briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this remand from the United States Supreme Court. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2]New Mexico law provides that all commercial motor carrier vehicles must
(continued...)

N.M. Stat. Ann. § 65-5-1, officers from the New Mexico Department of Public Safety approached Mitchell's tractor-trailer for inspection. Mitchell told the officers he was traveling from Phoenix, Arizona to Atlanta, Georgia with an empty trailer. On review of Mitchell's log book, the officers conducting the inspection determined it contained inaccuracies and evidence of falsification. In response to questioning, Mitchell told the officers he was going to pick up a cargo load at a nearby truck stop. An officer, however, had personal knowledge that particular truck stop did not have a loading dock and was essentially a convenience store.

The officers requested that Mitchell open the trailer to confirm it was empty. The opened door revealed five boxes, which Mitchell claimed contained "parts." The officer asked Mitchell to open the boxes to verify the contents. Mitchell replied he was not sure that was a good idea. The officer asked again and Mitchell consented. The boxes contained marijuana.

Mitchell was charged with possession of more than 100 kilograms of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The district court denied his motion to suppress the marijuana, holding the search did not violate the Fourth Amendment. Mitchell entered into a conditional guilty plea, reserving his right to appeal the district court's decision

---

[2](...continued)
stop at every port of entry. N.M. Stat. Ann. § 65-5-1(A).

on the motion to suppress.  The district court sentenced Mitchell to sixty months'

imprisonment.

Although judgment was entered in Mitchell's case on February 9, 2005, a

notice of appeal was not filed until February 25, 2005, one day outside the ten-

day period allowed under Federal Rule of Appellate Procedure 4(b)(1).[3]  Mitchell

filed a contemporaneous motion in the district court seeking an extension of time

to file the notice of appeal due to excusable neglect.  Fed. R. App. P. 4(b)(4).

The district court granted the motion.  In this court, both Mitchell and the

government briefed the merits of the appeal, but did not address whether the

district court erred in granting Mitchell's motion for an extension to file the

notice of appeal.  This court, recognizing that the motion may have been

improperly granted, raised the issue at oral argument *sua sponte*.[4]

This panel issued an opinion in Mitchell's case in September of 2006

holding as a matter of law that Mitchell's untimely notice of appeal was not the

result of excusable neglect and dismissing the appeal for lack of jurisdiction.

*Mitchell*, 464 F.3d at 1149.  As noted above, this matter is now before us on

---

[3]This court's previous decision in *United States v. Mitchell*, 464 F.3d 1149, 1150 (10th Cir. 2006), erroneously stated that Mitchell's notice of appeal was filed six days late.  *See* Fed. R. App. P. 26(a).

[4]At that time, compliance with the time bar of Fed. R. App. P. 4(b) was considered "mandatory and jurisdictional."  *Gooch v. Skelly Oil Co.*, 493 F.2d 366, 368 (10th Cir. 1974).  This court, therefore, had an obligation to inquire into its jurisdiction to consider the appeal.  *See Mitchell*, 464 F.3d at 1150.

remand from the Supreme Court for reconsideration in light of *Bowles v. Russell*, 127 S. Ct. at 2360. *Mitchell*, 127 S. Ct. at 2973.

### III.  Effect of an Untimely Notice of Appeal

The time bar of the Federal Rules of Appellate Procedure for the filing of a notice of appeal in a criminal case was long considered "mandatory and jurisdictional." *Wilkinson v. United States*, 278 F.2d 604, 605 (10th Cir. 1960) (per curiam) (citing *United States v. Robinson*, 361 U.S. 220, 224 (1960)).  The Supreme Court's recent decision in *Bowles*, however, clarified that court-issued federal procedural rules not derived from statutes are not jurisdictional, but rather inflexible claim-processing rules.  127 S. Ct. at 233-36.  This court recently held that, in light of *Bowles*, Federal Rule of Appellate Procedure 4(b)(1) is a claim-processing rule.  *United States v. Garduño*, No. 06-2317, 2007 WL 3261372, at *1 (10th Cir. Nov. 6, 2007).  As a result, dismissal of Mitchell's appeal, based on his failure to file a timely notice of appeal, is no longer mandatory and jurisdictional.

Nevertheless, the time bar in Rule 4(b) must be enforced by this court when properly invoked by the government.  *Garduño*, 2007 WL 3261372, at *3; *see Eberhart v. United States*, 546 U.S. 12, 19 (2005) ("These claim-processing rules thus assure relief to a party properly raising them.").  In this case the government never objected to the untimeliness of Mitchell's notice of appeal and, as a result,

forfeited its opportunity to ensure enforcement of the rule.[5] Although it acknowledges that after *Bowles* this court has no obligation to raise the issue of timeliness, the government maintains this court could and should raise and decide the issue *sua sponte*.

We begin this analysis by noting that this area of the law has been in flux since *Kontrick v. Ryan*, 540 U.S. 443 (2004), and *Eberhart v. United States*, 546 U.S. at 12, first indicated the time limitations in the federal rules may not be jurisdictional under some circumstances. As a result, there is limited case law indicating how the courts should enforce those rules which are no longer jurisdictional. The question of whether a court may *sua sponte* raise timeliness under Rule 4(b) is one of first impression in this circuit and appears to have only

---

[5]This court need not consider in this case what actions the government must take to properly raise an objection to the district court's excusable-neglect based grant of an extension of time to file a notice of appeal because the government did not raise in any fashion the timeliness of Mitchell's notice of appeal. While a simple objection may be sufficient, something more may be required when an extension has been granted. *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996) (holding an argument is waived when the litigant fails to make any argument or cite any authority supporting an assertion); *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1045 (10th Cir. 1994) (holding district court's grant of an extension under Rule 4(a)(5) is reviewed for abuse of discretion).

been addressed tangentially in other circuits.[6]  *See Wilburn v. Robinson*, 480 F.3d 1140, 1143-48 (D.C. Cir. 2007).

*A.*

*Kontrick* and *Eberhart* do not specifically speak to the issue of whether a court may *sua sponte* raise timeliness under non-jurisdictional federal rules.  They generally indicate, however, that claim-processing rules must be raised by the parties.  In *Kontrick*, which involved the time constraints of Bankruptcy Rule 4004 governing when a party must file a complaint objecting to a debtor's discharge, the party seeking to assert the time bar waited until after the matter had been fully adjudicated on the merits.  540 U.S. at 451.  The Court analogized the

---

[6]The government points to *Alva v. Teen Help*, 469 F.3d 946 (10th Cir. 2006), as support for the notion that the court may *sua sponte* raise the appellant's compliance with Rule 4(b)(1).  The *Alva* court held that Rule 4(a), because it implements 28 U.S.C. § 2107, is a jurisdictional rule not subject to waiver.  469 F.3d at 953.  Therefore, the issue was properly raised and disposed of *sua sponte* because the court did not have jurisdiction to hear the appeal.  *Id*.  The court then noted, "[b]ased on our conclusion, we need not address our ability to *sua sponte* enforce our own rules."  *Id*. at 955 n.16.  The court nevertheless went on to discuss whether *Kontrick v. Ryan*, 540 U.S. 443 (2004)*,* or *Eberhart v. United States*, 546 U.S. 12 (2005), impacted the court's ability to enforce its own rules and concluded that they did not.  *Id*. at 955-56.  Because the *Alva* court concluded it did not have jurisdiction over the appeal, reaching an alternative holding would have been an exercise of hypothetical jurisdiction in violation of *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).  Because the *Alva* court specifically noted it did not need to reach the issue, and because treating the language as binding would raise *Steel Company* concerns, the treatment of *Kontrick* and *Eberhart* in *Alva* is dicta and is not binding on this panel.  *Bates v. Dep't of Corr.*, 81 F.3d 1008, 1011 (10th Cir. 1996) ("[A] panel of this Court is bound by a holding of a prior panel of this Court but is not bound by a prior panel's *dicta*.").

time bar in the Bankruptcy Rules to affirmative defenses governed by Fed. R. Civ. P. 8(c), stating "under the Bankruptcy Rules as under the Civil Rules, a defense is lost if it is not included in the answer or amended answer." 540 U.S. at 459. By invoking the affirmative defense provision of the Federal Rules of Civil Procedure, the Court implied that failure to raise a timeliness constraint amounts to a forfeiture of the issue. *See Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994) ("Failure to plead an affirmative defense results in a waiver of that defense."). The Court in *Kontrick* did not address whether the district court could raise Rule 4004 *sua sponte*. Nevertheless, as courts generally may not raise affirmative defenses *sua sponte*, *Kontrick* may imply courts cannot raise time bars in claim-processing federal rules. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653-56 (4th Cir. 2006).

In *Eberhart*, the Court expanded on its holding in *Kontrick* by ruling that Fed. R. Crim. P. 33(a), which includes time limitations for filing new-trial motions, is a claim-processing rule. 546 U.S. at 13. In that case, the government raised for the first time on appeal an objection to the defendant's failure to comply with the time limitations of Rule 33(a). *Id*. at 14. The Court held, "[h]ere, where the Government failed to raise a defense of untimeliness until after the District Court had reached the merits, it forfeited that defense. The Court of Appeals should therefore have proceeded to the merits." *Id.* at 19. The

implication from this language may be that a court does not have the option to raise the timeliness issue *sua sponte*.

Both *Kontrick* and *Eberhart*, however, can be distinguished from the case before this court.  Most notably, *Kontrick* and *Eberhart* involved rules that apply at the trial level where Fed. R. Civ. P. 8(c) operates as the mechanism for pleading affirmative defenses.[7]  There is no analogous rule at the appellate level. Furthermore, in both *Kontrick* and *Eberhart* the timeliness issue was not raised until after the dispute had been adjudicated on the merits.  That is not the case here as this court recognized the timeliness issue before proceeding to the merits. *Mitchell*, 464 F.3d at 1149.

The government relies on *Day v. McDonough*, 547 U.S. 198 (2006), as support for its argument that despite *Kontrick* and *Eberhart* this court may raise *sua sponte* the timeliness of a notice of appeal.  The justifications for the result in *Day*, however, are unique to the habeas corpus context and have limited applicability to the case at bar.  *Day* presented the question of whether a federal district court may *sua sponte* dismiss a habeas petition as untimely for failure to comply with the time bars of the AEDPA after the state has answered the petition without raising a timeliness objection.  547 U.S. at 201.  Although recognizing district courts were not obligated to raise the non-jurisdictional statute of

---

[7]Federal Rule of Civil Procedure 8 applies in adversarial proceedings conducted under the Bankruptcy Rules.  Fed. R. Bank. P. 7008(a).

limitations, the Court held district courts may raise the time bar *sua sponte* provided the parties have been accorded fair notice and opportunity to present their positions. *Id.* at 206, 210.

In reaching its holding, the Court explained why the usual practice of requiring the parties to plead all affirmative defenses did not apply under these circumstances. First, the Court drew parallels between AEDPA's time bar and other affirmative defenses unique to the habeas context such as exhaustion of state remedies, procedural default, and non-retroactivity, all of which may be may be raised by a court *sua sponte* under current precedent.[8] *Id.* at 205-06 & 209. Second, the Court recognized that "[t]he considerations of comity, finality, and the expeditious handling of habeas proceedings that motivated AEDPA . . . counsel against an excessively rigid or formal approach to the affirmative defenses." *Id.* at 208 (footnote omitted). Third, the Court noted that consistent with the Rules of Civil Procedure and the statutes governing habeas petitions, the district court could have brought the matter of the limitations period to the attention of the state and entertained an amendment to the state's answer. *Id.* at 209. In light of this extant procedural avenue, the Court concluded it would

---

[8] *Sua sponte* consideration of exhaustion of state remedies and nonretroactivity is explicitly permitted by Supreme Court precedent. *Granberry v. Greer*, 481 U.S. 129, 133 (1987); *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994). While the Supreme Court has not decided whether federal courts may raise procedural default, the courts of appeals have unanimously held so. *See Day v. McDonough*, 547 U.S. 98, 206 (2006).

elevate form over substance if it were to disallow district courts to raise the

limitations issue *sua sponte*. *Id.*

At the core of the Court's opinion in *Day* is the notion that habeas

proceedings are different from ordinary civil litigation and, as a result, our usual

presumptions about the adversarial process may be set aside. *See* 547 U.S. at 202.

The rationales offered by the Court in *Day* are therefore not necessarily

applicable to the case before this court. Rule 4(b) is not analogous to the

AEDPA-based affirmative defenses at issue in *Day*. AEDPA is a unique statutory

regime which implicates overarching values of federalism, comity, and finality of

state court judgments.[9] *Rhines v. Weber*, 544 U.S. 269, 276 (2005) ("One of the

statute's purposes is to reduce delays in the execution of state and federal

criminal sentences." (quotation omitted)); *Williams v. Taylor*, 529 U.S. 420, 436-

37 (2000) (noting court-created affirmative defenses such as exhaustion

requirements and procedural bar advance these purposes). AEDPA's statute of

limitations itself serves unique purposes beyond the concerns of the parties such

_____

[9]In *Williams v. Taylor*, 529 U.S. 420, 436 (2000), the Court explained
Congress intended AEDPA to advance the principles of comity, finality and
federalism:

> Federal habeas corpus principles must inform and shape
> the historic and still vital relation of mutual respect and
> common purpose existing between the States and the
> federal courts. In keeping this delicate balance we have
> been careful to limit the scope of federal intrusion into
> state criminal adjudications and to safeguard the States'
> interest in the integrity of their criminal and collateral
> proceedings.

as "promot[ing] judicial efficiency and conservation of judicial resources, safeguard[ing] the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lend[ing] finality to state court judgments within a reasonable time." *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000). Nor is the avenue of amending the proceedings available here as it was in *Day*. We know of no rule of procedure or statute that provides this court with a procedural mechanism analogous to Federal Rule of Civil Procedure 15(a) or the statutes governing habeas. *See Day*, 547 U.S. at 209; Fed. R. Civ. P. 15(a); 28 U.S.C. § 2243.

Thus, the rule set out in *Day* is tied to the unique balancing that must take place because of the existence of the writ of habeas corpus and the federalism inherent in our constitutional system. While Fed. R. App. P. 4(b) certainly impacts judicial efficiency and contributes to the finality of federal criminal sentences, it does not raise the federalism concerns so crucial in the habeas context. Because the type of interests the AEDPA's statute of limitations protects are not implicated here, the result in *Day* is of only marginal relevance to the issue before the court in this case.

### *B.*

No circuit court has directly addressed whether it is appropriate to *sua sponte* enforce the time limitations of Rule 4(b). When considering Rule 4(b) and other claim-processing rules, courts have generally just proceeded to the merits of

the case after the determining the party forfeited its timeliness objection. *United States v. Lee*, 242 F. App'x 209, 211 (5th Cir. 2007) (unpublished) ("[B]ecause the Government did not oppose Lee's out-of-time appeal, and has thus waived application of Rule 4(b), we may address this case on the merits."); *see also Huerta v. Gonzales*, 443 F.3d 753, 756-57 (10th Cir. 2006) (holding the Board of Immigration Appeals regulations governing appeals are claim-processing rules and proceeding to the merits after determining the government had forfeited its timeliness objection); *First Ave. W. Bldg., LLC v. James* (*In re Onecast Media, Inc.*) 439 F.3d 558, 561 (9th Cir. 2006) (raising the timeliness of the defendant's 59(e) motion *sua sponte*, but proceeding summarily to the merits after determining Rule 59(e) is claim-processing and the plaintiff forfeited its objection).

In cases where the power of the court to *sua sponte* enforce a claim-processing rule has been addressed, the results are mixed and do not necessarily apply to the case here. Some courts have interpreted *Kontrick* and *Eberhart* as permitting a district court to *sua sponte* raise a claim-processing rule, but these cases are not instructive because they contain no analysis of the issue and because the procedural posture is sufficiently different from the case before us.[10] *United*

[10]As to late motions for a new trial, two circuits have held in unpublished opinions that *Eberhart* does not prevent district courts from raising Rule 33(a)'s time bar *sua sponte*. *United States v. Bryant*, 186 F. App'x 298, 299 (3d Cir. 2006) (unpublished); *United States v. Fields*, 194 F. App'x 825, 826 (11th Cir.

(continued...)

-13-

*States v. Leijano-Cruz*, 473 F.3d 571, 572-73 (5th Cir. 2006); *United States v. Bryant*, 186 F. App'x 298, 299 (3rd Cir. 2006) (unpublished); *United States v. Fields*, 194 F. App'x 825, 826 (11th Cir. 2006) (unpublished).

One court of appeals has indicated that it does not have the power to *sua sponte* enforce a claim-processing rule. *Wilburn v. Robinson*, 480 F.3d 1140, 1148 n.12 (D.C. Cir. 2007).[11] The *Wilburn* court did not explain the basis for its conclusion, however, beyond rejecting the applicability of *Day*. *Id*. Furthermore, the holding was not unequivocal because the court also noted that even if *Day* did

[10](...continued)
2006) (unpublished). Neither court, however, offered any analysis of this conclusion. In *United States v. Leijano-Cruz*, the defendant objected to the district court's findings of untimeliness and no excusable neglect where the government did not file a response to his motion for a Rule 4(b)(4) extension to file a notice of appeal. 473 F.3d 571, 572-73 (5th Cir. 2006). The appeals court affirmed the district court's decision. *Id*. at 574. *Leijano-Cruz*, however, has no applicability here because that decision turns on whether the government must respond to a motion for extension in the district court before the court may deny it, rather than the power of the court to raise a timeliness issue *sua sponte*.

[11]The court in *Wilburn v. Robinson* first concluded that although the time bar in Fed. R. App. P. 4(a) derived from a statute, the exceptions to the time bar in Fed. R. App. P. 4(a)(4) did not and were therefore claim-processing rules. 480 F.3d 1140, 1146-47 (D.C. Cir. 2007). A Rule 60(b) motion tolls the time period for filing a notice of appeal if filed within ten days of judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The plaintiff's 60(b) motion was filed eleven days after judgment, but the defendant did not object to the timeliness of the notice of appeal. *Wilburn*, 480 F.3d at 1147. Thus, the court concluded, the untimeliness of the Rule 60(b) motion was forfeited, the time limitations were tolled, and the notice of appeal was timely. *Id*. at 1147. We perceive several substantive problems with the holding in *Wilburn*. The issue of whether the tolling requirements of Rule 4(a)(4) are jurisdictional or claim-processing rules, however, is not before this court. We therefore limit our discussion to the *Wilburn* court's treatment of *sua sponte* application of a claim-processing rule.

permit it to *sua sponte* enforce the time bar, it would not choose to do so. *Id*.
Thus, there is almost no guidance on or analysis of the issue before us today from the circuit courts.

*C.*

Although there is limited authority discussing *sua sponte* application of the time bars in claim-processing rules, these time bars can be analogized to traditional affirmative defenses. *Kontrick* indicates such a time bar may be akin to an affirmative defense and therefore must be pleaded by the party benefitting from its application. 540 U.S. at 458-59 (analogizing the time bar in Fed. R. Bankr. P. 4004 to time bars that must be raised pursuant to Fed. R. Civ. P. 8(c)). The comparison is some help in the absence of precedent.

In general, a statute of limitations may not be raised *sua sponte* and all circuits to consider this issue have held so explicitly. *Eriline Co. S.A.*, 440 F.3d at 653-54; *Haskell v. Wash. Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988); *Davis v. Bryan*, 810 F.2d 42, 45 (2d Cir. 1987); *Wagner v. Fawcett Publ'ns*, 307 F.2d 409, 412 (7th Cir. 1962). Statutes of limitations have traditionally been construed as benefitting the litigants, not the court. For example, "'[s]tatutes of limitations are primarily designed to assure fairness to defendants.'" *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1058 (10th Cir. 2006) (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). Statutes of limitations "'promote justice by preventing surprises through the revival of claims that have been allowed to

-15-

slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Id*. (quoting *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

Although affirmative defenses must usually be pleaded by the party in the first responsive pleading, the Supreme Court has fashioned some exceptions to this general rule. Specifically, the Court has indicated it may be appropriate for a court to raise a preclusion defense *sua sponte* when "special circumstances" exist. *Arizona v. California*, 530 U.S. 392, 412 (2000). Res judicata is an affirmative defense which must usually be pleaded by the parties pursuant to Fed. R. Civ. P. 8(c) or it is lost. *Id.* at 410; Fed. R. Civ. P. 8(c). In *Arizona*, the State parties had opportunities to present their preclusion argument at earlier stages in the litigation, but failed to do so. *Id*. at 409. Despite this, the State parties urged the Court to raise the preclusion bar *sua sponte*. *Id*. at 412. The Court noted that "[j]udicial initiative of this sort might be appropriate in special circumstances." *Id*. It explained "[t]his result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Id*. (quotation omitted).

The Court declined to find special circumstances in that case and thereby significantly narrowed the field of what might constitute "special circumstances." *Id*. The State parties in *Arizona* argued the allegedly precluded issue could have

-16-

been presented in an earlier proceeding, but deliberately was not. *Id*. at 407-08. Thus, there was no contention a court had previously decided the issue presented. *Id*. at 412. The Court explained "[w]here no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication." *Id*. at 412-13.

Similarly, in *Link v. Wabash R.R. Co.*, the Supreme Court upheld a district court's *sua sponte* dismissal for failure to prosecute. 370 U.S. 626, 630-31 (1962). The Court, noting that courts have always had the power to dismiss for failure to prosecute, explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id*. at 629-30. This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. at 630-31.

*D.*

Ours is an adversarial system of justice. The presumption, therefore, is to hold the parties responsible for raising their own defenses. *See Eriline Co. S.A.*, 440 F.3d at 654. A narrow exception may exist, however, when the issue implicates the court's power to protect its own important institutional interests. *See Arizona*, 530 U.S. at 412; *Link*, 370 U.S. at 629-31. This principle was at

-17-

work in *Day* where the court looked to the important values the habeas scheme was designed to protect and determined they went beyond the interests of the parties. 547 U.S. at 205. It also underlies *Kontrick* where, in an initial step in its analysis, the Court examined the purposes of the Bankruptcy Rule at issue and determined the rule functioned as an affirmative defense for the debtor.[12] 540 U.S. at 456. Together, these cases suggest that when a rule implicates judicial interests beyond those of the parties, it may be appropriate for a court to invoke the rule *sua sponte* in order to protect those interests. *See Arizona*, 530 U.S. at 412; *Link*, 370 U.S. at 629-31.

This court, therefore, should look to the purposes of Rule 4(b) in addressing *sua sponte* application. Although they function in much the same way as a statute of limitations, the time bars of the federal rules of procedure are not necessarily for the exclusive benefit of the litigants as are statutes of limitations

---

[12]After determining Bankruptcy Rules 4004 and 9006(b)(3) were claim-processing rules, the *Kontrick* Court looked to the purpose of the time limitations in the rules. 540 U.S. at 456. The Court concluded the relevant procedural rules serve three purposes,

> First, they inform the pleader, *i.e.*, the objecting creditor, of the time he has to file a complaint. Second, they instruct the court on the limits of its discretion to grant motions for complaint-filing-time enlargements. Third, they afford the debtor an affirmative defense to a complaint filed outside the Rules 4004(a) and (b) limits. This case involves the third office of the Rules.

*Id.*

in civil litigation. Rule 4(b) differs from most time bars, including the time bar in *Kontrick*, in that it plays an important role in ensuring finality of a criminal conviction. Finality is not solely an interest of the parties to a criminal case. It also serves societal interests and the interests of judicial administration by minimizing uncertainty and waste of judicial resources caused by undue delay. *See Day*, 547 U.S. at 208 (pointing to finality of judgment as an important judicial value); *Link*, 370 U.S. at 629-30 (noting that calendar congestion and efficiency of judicial administration is a legitimate judicial concern); *Arizona*, 530 U.S. at 412 (citing conservation of judicial resources as a justification for *sua sponte* raising an affirmative defense); *United States v. Elliott*, 264 F.3d 1171, 1174 (10th Cir. 2001) (explaining appeal waivers serve an important function in the judicial administrative process by preserving finality of judgments).

Because Rule 4(b) implicates important judicial interests beyond those of the parties, we hold that this court may raise its time bar *sua sponte*. This power, however, is limited and should not be invoked when judicial resources and administration are not implicated and the delay has not been inordinate.[13] *See*

---

[13]The dissent's criticisms of this test include: (1) a failure to have a bright line rule resolving for all cases the exact amount of time that is inordinate; and (2) the court will be required in all cases to undertake a determination of whether the merits have previously been presented in order to properly consider judicial resources and administration. As to the former, we fully acknowledge that no exact formula is proposed to determine inordinate delay, a task best resolved according to the varying circumstances of each case. As to the second criticism, the dissent fails to acknowledge that duplication of effort is but one aspect of

(continued...)

-19-

*Arizona*, 530 U.S. at 412-13 ("Where no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication."). Mitchell's notice of appeal was one day late. This breach of Rule 4(b), however, was not itself the cause of any waste of judicial resources nor did it constitute inordinate delay in appellate claim processing. The record does not indicate any waste of judicial resources were we to reach the merits of Mitchell's appeal. Nor is there any indication that efficiency of judicial administration or finality are implicated. As a consequence, it would be inappropriate to raise *sua sponte* the timeliness of Mitchell's notice of appeal. Accordingly this court proceeds to the merits of the appeal.

## IV. Constitutionality of the Search of Mitchell's Vehicle

"When reviewing an order granting a motion to suppress, we accept the trial court's factual findings unless clearly erroneous, and we view the evidence in the light most favorable to the district court's finding." *United States v. Little*,

---

[13](...continued)
judicial resources and administration and fails to consider the factor of inordinate delay. The dissent's more global criticism is that the power of the court to dismiss *sua sponte* will rarely be invoked. In this regard, the dissent is correct and this is how it should be. The nature of the adversarial process will cause the adverse party to challenge an untimely notice of appeal in most all cases; exceptions to the adversarial process have always been narrow and this exception should be no different.

60 F.3d 708, 712 (10th Cir. 1995) (quotations omitted). The issue of Fourth Amendment reasonableness, however, is reviewed de novo. *Id*.

Mitchell argues his arrest was in violation of the Fourth Amendment because, after the initial inspection, the officers had no reasonable suspicion Mitchell had committed an offense. In particular, Mitchell contends the inspection of the inside of the trailer was unlawful because N.M. Stat. Ann. § 65-5-1, which authorizes inspections of commercial trucks, is unconstitutional and thus could not support the regulatory search undertaken in this case.

This court has previously held the commercial trucking industry is a closely regulated industry. *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1210 (10th Cir. 2001). As a result, whether New Mexico's regulatory scheme is a sufficient substitute for a warrant is determined by the three-part test articulated in *New York v. Burger*, 482 U.S. 691 (1987). Under *Burger*, a warrantless inspection made pursuant to a regulatory scheme governing a pervasively regulated business is reasonable if it meets three criteria. *Id*. at 702. First, the regulatory scheme must be informed by a substantial government interest. *Id*. Second, warrantless inspections must be necessary to further the regulatory scheme. *Id*. at 702-03. Third, the inspection program must provide a constitutionally adequate substitute for a warrant in terms of the certainty and regularity of its application. *Id*. at 703.

Mitchell acknowledges this court has previously considered the constitutionality of the New Mexico regulatory scheme governing commercial

-21-

carriers and held the statute was constitutional. *Vasquez-Castillo*, 258 F.3d at 1211-12; s*ee also United States v. Gwathney*, 465 F.3d 1133, 1139-40 (10th Cir. 2006). He contends, however, that *Vasquez-Castillo* is distinguishable on its facts and therefore should not be applied here. Mitchell's contention is incorrect as a matter of law. *Vasquez-Castillo* analyzed the constitutionality of New Mexico's regulatory scheme using the three-prong test laid out in *Burger* and held that the scheme satisfied all three prongs. *Id*. at 1211-12. As this court has noted, "the *Burger* criteria are applied generally to a statutory scheme, not to a given set of facts arising under that scheme." *Gwathney*, 465 F.3d at 1140. Under the established precedent of this circuit, the New Mexico statutory scheme meets the requirements of the warrant exception set out in *Burger*.[14] *See id.*; *Vasquez-Castillo*, 258 F.3d at 1212.

Mitchell also argues the officer's order to unlock the trailer exceeded the scope of the permissible § 65-5-1 inspections because Mitchell told the officer there was no cargo in the trailer and there was therefore no justification for inspecting the inside of the trailer. The New Mexico statute authorizes inspectors to "inspect the vehicle and its contents to determine whether all laws and all rules

---

[14]Mitchell argues, in the alternative, if *Vasquez-Castillo* is not factually distinguishable, this court should decline to follow it because it was wrongly decided. This panel, however, may not overrule the decision of a previous panel. "We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam).

and regulations of the departments of this state with respect to public safety, health, welfare and comfort have been fully complied with." N.M. Stat. Ann. § 65-5-1(F). In addition, the statute provides "[t]he person in charge of the port of entry may satisfy himself as to the contents of the cargo." *Id*. § 65-5-1(D). An inspector may also inspect the vehicle's contents to ensure all excise taxes on fuel, alcohol, or other property have been paid. *Id*. § 65-5-1(E). This court has held "New Mexico's regulatory scheme clearly contemplates entrance into the trailer to inspect blocking and bracing, and also allows inspection of the contents of the vehicle." *Gwathney*, 465 F.3d at 1139.

There is no meaningful distinction under this statutory scheme between inspection of the contents of a vehicle and inspection of a vehicle to confirm there are no contents. If an operator could escape inspection by giving a verbal statement that the trailer was empty, New Mexico's ability to conduct meaningful inspections would be seriously compromised. This is particularly true where, as here, the officer has reason to believe the operator has not provided accurate information. New Mexico's statutory scheme contemplates the inspection of trailers to confirm compliance with New Mexico's laws and this authorization extends to inspections to confirm an operator's assertion that he or she carries no cargo. N.M. Stat. Ann. § 65-5-1(F); *Gwathney*, 465 F.3d at 1140.

Because we hold that the officer's inspection of the inside of the trailer did not violate the Fourth Amendment, Mitchell's argument that his consent to

-23-

examine the contents of the boxes was tainted fails. The district court found, and Mitchell does not directly contest, that he consented to the search of the boxes. Absent any Fourth Amendment violation, this consent was valid and justified a warrantless search. *United States v. Jackson*, 381 F.3d 984, 988 (10th Cir. 2004).

## V.  Conclusion

The judgment of the district court is **AFFIRMED**.

05-2052, <u>United States v. Mitchell</u>

**LUCERO**, J., dissenting.


To the extent my respected colleagues recognize that we have discretion to dismiss, sua sponte, an appeal as untimely under Federal Rule of Appellate Procedure 4(b), even when an appellee has forfeited the issue, I concur with their opinion.[1] I part company with the majority in articulating what circumstances justify the exercise of our discretion to dismiss.[2] In my judgment, the time limits for filing a notice of appeal in criminal cases are of sufficient importance—to both this court and the parties it serves—that we should apply Rule 4(b) in accordance with its clear terms in all but extraordinary circumstances. Both the rule itself and our jurisprudence clearly define good cause and excusable neglect

---

[1] As the majority appropriately acknowledges, neither <u>Kontrick v. Ryan</u>, 540 U.S. 443 (2004), nor <u>Eberhart v. United States</u>, 546 U.S. 12 (2005) (per curiam), "specifically speak to the issue of whether a court may sua sponte raise timeliness under non-jurisdictional federal rules." Maj. Op. at 7. Instead, those cases primarily address the role of the forfeiture doctrine in the enforcement of nonjurisdictional time limits, an issue antecedent to this court's sua sponte power to dismiss an untimely appeal. <u>Cf.</u> <u>Alva v. Teen Help</u>, 469 F.3d 946, 955 (10th Cir. 2006) (recognizing that "[n]othing in <u>Kontrick</u> or <u>Eberhart</u> upsets our ability to enforce our own rules").

[2] Admittedly, my disagreement with the majority in this case is extremely narrow, in that it arises in relation to an issue that will rarely come before the court. In light of our adversarial system of justice, appellees will likely invoke Rule 4(b)'s time limitations to bar an untimely appeal in the vast majority of cases. <u>See</u> <u>Eberhart</u>, 546 U.S. at 18 (recognizing that "the Government is unlikely to miss timeliness defects very often"). When they do so, we have an obligation to dismiss the appeal. <u>Id.</u> at 19; <u>United States v. Garduño</u>, 506 F.3d 1287, 1290-91 (10th Cir. 2007).

as the acceptable criteria for excusing a failure to file a timely notice of appeal. Counsel's conduct in this case meets neither criterion. To the contrary, Mitchell's counsel advances a garden-variety mea culpa, and I would therefore exercise my discretion to dismiss his appeal. I thus respectfully dissent from the majority's explication of when we should exercise our discretion to dismiss as well as its consideration of the merits of Mitchell's case.

**I**

Given that we have discretion to dismiss an untimely appeal, we need only determine precisely how we should exercise that discretion. According to the majority, we should sua sponte dismiss an admittedly untimely appeal in only "limited" circumstances, never invoking the power unless: (1) the delay in filing the appeal has been "inordinate," and (2) concerns of "judicial resources and administration" are implicated. Maj. Op. at 20. In most cases—including the one at bar—the majority would rely on the appellee to raise the timeliness issue, and if forfeited by that party, would address the merits of the appeal. See id. at 18-20. This places an appellee's forbearance in control of our docket, and both principle and pragmatism counsel against any such rule.

As a matter of principle, the rules governing timely filing of notices of appeal are of sufficient importance that this court should take notice of their violation. As the majority recognizes, Rule 4(b) "implicates important judicial interests beyond those of the parties . . . ." Maj. Op. at 19. Not only does the

-2-

rule serve to promote the finality of criminal convictions, which benefits the criminal justice system as a whole, but it also minimizes uncertainty and ensures that judicial resources will be allocated efficiently and in a structured manner. See Maj. Op. at 19-20; Schacht v. United States, 398 U.S. 58, 68-69 (Harlan, J., concurring) (recognizing that time requirements for filing a petition for certiorari "are essential to an orderly appellate process"). By allowing an untimely appeal without a legally cognizable justification, as the majority does in this case, we necessarily undermine those important interests.

Relatedly, the majority's decision to reach the merits of Mitchell's appeal can only have the effect of allowing future parties also to file untimely notices of appeal. As I see it, we should require diligent observation of the procedural rules for timely initiating appeals. By so doing, we provide similarly situated parties with a healthy incentive to comply with the procedural rules as they are written.

As a matter of practicality, I am concerned with the ambiguity inherent in the majority's two-factor test for determining when we should exercise our discretion, as well as that test's bias in favor of hearing untimely appeals. With respect to the first factor, the majority offers no definition for what exactly constitutes an "inordinate" delay in the filing of a notice of appeal. We know from this case that one day is not inordinate, but what about ten days? Or thirty days? Or even one hundred days? Clearly the question is one of reasonable debate that will have to be addressed in each individual case. But absent any

-3-

concrete definition, future parties (and future panels of this court) will be uncertain as to whether the failure to timely file a notice of appeal will ultimately result in dismissal, at least where an appellee has forfeited its timeliness objection.

The second factor, whether concerns of judicial resources and administration are implicated, raises a separate, yet equally relevant concern. <u>See</u> Maj. Op at 20-21. Under the majority's definition, a waste of resources might occur when we are called upon to decide an issue that we have previously adjudicated in the same case. <u>See</u> Maj. Op. at 20-21 (citing <u>Arizona v. California</u>, 530 U.S. 392, 412-413 (2000) (recognizing that sua sponte dismissal of an argument might be appropriate when a court is faced with "the prospect of redoing a matter once decided")). According to this theory, before we can decide whether it is appropriate to sua sponte dismiss an appeal as untimely, we must first take a peek at the merits of the case and entertain arguments from the parties as to whether, in fact, we have already addressed the issues presented. But that strikes me as only adding an extra layer of legal inquiry—and a potentially messy one—to what should be a fundamentally straightforward question: Was the notice of appeal timely or not? Moreover, in the context of direct criminal appeals, the only cases to which Rule 4(b) applies, we are almost <u>never</u> called upon to resolve an issue that we have already addressed in the same litigation. By its very design then, the factor appears to be largely superfluous and will almost universally

-4-

counsel in favor of appellants, which, as previously noted, places control of our docket in the hands of the parties.

## II

In contrast to the majority, I would dismiss almost all untimely appeals, regardless of whether an appellee forfeits its objection by not properly raising it. Unless an appellant comes forward with extraordinary circumstances to justify the failure to file a timely notice of appeal in a criminal case, the court should exercise its discretion to enforce the plain terms of Rule 4(b) and sua sponte dismiss the appeal. See Schacht, 398 U.S. at 69 (Harlan, J., concurring) (expressing the view that "discretion [to relax timeliness requirements] must be exercised sparingly, and only when an adequate reason exists to excuse noncompliance with our Rules").

Rule 4(b) itself is already fairly permissive in setting forth the requisite deadlines; it provides two exceptions that will save a large number of late appeals from dismissal. Under the rule, an appellant may file a late notice of appeal up to 30 days after the deadline has passed if a district court finds that the failure to timely file is a result of "good cause" or "excusable neglect." Fed. R. App. P. 4(b)(4);[3] see also United States v. Vogl, 374 F.3d 976, 981 (10th Cir. 2004).

---

[3] Rule 4(b)(4) provides:
Upon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion
(continued...)

-5-

Given the relative breadth of the circumstances these twin exceptions embrace, I see no reason to look outside the rule for <u>additional</u> justifications for not enforcing the time limits.  <u>See</u> <u>Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship</u>, 507 U.S. 380, 392 (1993) (referring to "excusable neglect" as an "elastic concept").  As a result, I disagree with the majority that we should engraft another exception into Rule 4(b) and allow this appeal because Mitchell's delay was not "inordinate" and did not itself cause the "waste of judicial resources." Countless lawyers throughout the circuit on any given day are "busy in trial." Are we to excuse all such lawyers from complying with the clear time limitations of our rules, as long as they are not "inordinate" in their delay?  If that be the rule, then we should follow appropriate procedures in amending Rule 4(b) to that effect.[4]

---

[3](...continued)
and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).

[4] Nothing in <u>Bowles v. Russell</u>, 127 S. Ct. 2360 (2007), upsets our holding in <u>United States v. Mitchell</u>, 464 F.3d 1149, 1149 (10th Cir. 2006), that "counsel's heavy work load and involvement with other matters" does not, as a matter of law, constitute excusable neglect.  Mitchell has thus failed to show that an extension of time to file was properly granted under the terms of the rule.

## III

Because this case does not present extraordinary circumstances warranting an exception to Rule 4(b), I respectfully dissent from the majority's decision to reach the merits of Mitchell's appeal.