**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 28, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GWAUN DIRON FRIERSON,

Defendant-Appellant.

No. 08-6107
(D.C. No. 5:06-CR-00214-HE-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

Pursuant to a plea agreement, Gwaun Diron Frierson pleaded guilty to

possession of more than fifty grams of cocaine base (crack) with intent to

distribute in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 220 months

of imprisonment, below the advisory guideline range of 235 to 293 months. His

plea agreement contains a waiver of his right to move to modify his sentence

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

under 18 U.S.C. § 3582(c)(2). Nonetheless, after the applicable Sentencing

Guideline was amended to lower the base offense levels for crack offenses,[1]

Frierson filed a § 3582(c)(2) motion requesting that the district court modify his

sentence. The district court dismissed his motion on the ground that its initial

sentencing decision took account of the then-pending amendment and also denied

his motion for reconsideration. Frierson appeals.[2]

On appeal, the government has moved to enforce the § 3582(c)(2) waiver

pursuant to *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc)

---

[1]    In an "interim measure to alleviate some of [the] problems" with the
100-to-1 quantity ratio applied for crack offenses as compared to powder cocaine
offenses, the 2007 amendments to Sentencing Guideline § 2D1.1 (effective
November 1, 2007) lowered the base offense levels for crack offenses by two
levels. *Notice of Submission to Congress of Amendments to the Sentencing
Guidelines Effective November 1, 2007*, 72 Fed. Reg. 28558, 28571-28573
(May 21, 2007). The change means that the base offense levels, which previously
were set so that the sentencing ranges fell *above* applicable mandatory minimum
terms of imprisonment, were reduced to *include* the mandatory minimums. *See
id.* at 28573.

[2]    Frierson's notice of appeal was filed more than ten days after the district
court's order denying his § 3582 motion, and thus it was filed too late to
challenge that decision. *See United States v. Espinosa-Talamantes*, 319 F.3d
1245, 1246 (10th Cir. 2003) (applying Fed. R. App. P. 4(b)(1)(A)'s ten-day
appeal period to appeals concerning § 3582 motions). The notice was timely to
appeal the denial of reconsideration.

The government, however, has not argued Frierson's appeal is untimely.
Because Rule 4(b) is a claim-processing rule rather than a matter of jurisdiction,
the government's failure to argue timeliness forfeits that contention. *United
States v. Mitchell*, 518 F.3d 740, 744 (10th Cir. 2008). We may recognize the
timeliness issue sua sponte, *see id.* at 750, but we decline to do so in this case.

(per curiam).[3]  Under *Hahn*, we consider "(1) whether the disputed [matter] falls within the scope of the waiver . . . ; (2) whether the defendant knowingly and voluntarily waived his . . . rights; and (3) whether enforcing the waiver would result in a miscarriage of justice."  *Id.* at 1325.

*Within Scope of Waiver*

The first question is whether this matter falls within the scope of the waiver.  *Id.*  Frierson's plea agreement describes the court's sentencing authority, then states:

> . . . defendant in exchange for the promises and concessions made by the United States in this plea agreement, knowingly and voluntarily waives his right to:
>
> a.  Appeal or collaterally challenge his guilty plea and any other aspect of his conviction, including but not limited to any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues;
>
> b.  Appeal, collaterally challenge, or *move to modify under 18 U.S.C. § 3582(c)(2) or some other ground, his sentence as imposed by the Court* and the manner in which the sentence is determined, provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case. . . .

---

[3]     The government did not seek to enforce the § 3582(c)(2) waiver in the district court because the district court denied the § 3582(c)(2) motion before the government entered an appearance.  It is not clear the government even was aware of the motion, as Frierson's certificate of service does not indicate that he served the government.  In these circumstances, we shall not consider the government's argument waived for failure to raise it in the district court.  *See also United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 n.3 (10th Cir. 2008) (allowing government to raise enforcement in its appellate response brief).

R. Vol. 1, Doc. 25 at 3-4 (emphasis added). Frierson filed a § 3582(c)(2) motion seeking to modify the sentence imposed by the district court, which was below the advisory Guideline range the court had established. Accordingly, this matter is within the scope of the waiver.

*Knowing and Voluntary Waiver*

The second question is whether the waiver was knowing and voluntary. *Hahn*, 359 F.3d at 1325. In evaluating this question, we consider "whether the language of the plea agreement states that [he] entered the agreement knowingly and voluntarily" and whether there is "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.* Frierson bears the "'burden to present evidence from the record establishing that he did not understand the waiver.'" *Id.* at 1329 (quoting *United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003)).

The waiver paragraph in Frierson's plea agreement specifically cites § 3582(c)(2) and states he entered the waiver knowingly and voluntarily. R. Vol. 1, Doc. 25 at 3. Just before the signature block, he acknowledged he had discussed the terms of the plea agreement with his attorney and he understood and accepted them, and "there are no other deals, bargains, agreements, or understandings which modify or alter these terms." *Id.* at 9. This language indicates Frierson entered the agreement, including the § 3582(c)(2) waiver, knowingly and voluntarily. In addition, in his Petition to Enter a Plea of Guilty,

-4-

he acknowledged his guilty plea was made voluntarily, free of force, threats, coercion, or promises outside of the plea agreement. *Id.*, Doc. 26 at 8-9.

During the Rule 11 colloquy, the district court confirmed he was entering his guilty plea voluntarily and was under no threat or coercion. R. Vol. 2 at 11. At the court's request the prosecutor summarized the terms of the plea agreement, specifically including the appellate and collateral-attack waiver. *Id.* at 12. Frierson confirmed the summary was consistent with his understanding of his agreement. *Id.* at 13. The district court then further addressed the appeal aspect of the waiver. *Id.* While the court did not explicitly discuss the § 3582(c)(2) aspect of the waiver during the colloquy, this failure does not render the waiver unknowing and involuntary given the specific reference to § 3582(c)(2) in the plea agreement and Frierson's written and oral averments regarding the knowing and voluntary nature of his actions. *Cf. United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003) (refusing to enforce waiver that did not refer to § 3582(c)(2), but noting that, had the plea agreement done so, "we would likely find that Defendant had waived his right to bring the instant motion"). Moreover, there is nothing in the record to show that Frierson would not have pleaded guilty if the Rule 11 colloquy had specifically addressed the § 3582(c)(2) waiver.

Frierson received substantial consideration for entering into the plea agreement. In exchange for his waiver of his rights to trial, appeal, and collateral attack, including the right to bring a § 3582(c)(2) motion, the government agreed

not to prosecute him for any other drug or firearms violations for the period stretching from January 1, 2005, through August 30, 2006. It also agreed, with certain limitations, not to use against him statements he made in connection with the plea agreement. Further, he received a two-level reduction for acceptance of responsibility. It does not appear that Frierson has requested to withdraw his plea or otherwise surrender any of these benefits.

In sum, there is no record evidence contradicting the written and verbal assertions of a knowing and voluntary waiver, *see Edgar*, 348 F.3d at 873, and thus we conclude Frierson's waiver of his right to bring a § 3582(c)(2) motion was knowing and voluntary.

*Miscarriage of Justice*

Finally, we consider whether enforcing the waiver would result in a miscarriage of justice. *Hahn*, 359 F.3d at 1325. The miscarriage-of-justice prong requires Frierson to show (a) his sentence relied on an impermissible factor such as race; (b) ineffective assistance of counsel in connection with the negotiation of the waiver rendered the waiver invalid; (c) his sentence exceeded the statutory maximum; or (d) the waiver is otherwise unlawful and the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1327 (quotation omitted).

Frierson argues his sentence was based on the impermissible factor of race because the 100-to-1 quantity ratio for powder cocaine and crack cocaine,

whereby one hundred grams of powder cocaine triggers the same mandatory penalties as one gram of crack, results in racial disparities in sentencing. We acknowledge the serious concerns underlying this argument. Since at least 1995, the Sentencing Commission repeatedly has urged Congress to reconsider the 100-to-1 quantity ratio established in the Anti-Drug Abuse Act of 1986. Each Commission report indicates, among other reasons for amending the quantity ratio, that the ratio more greatly affects African-Americans and creates the perception of racial disparities in sentencing. *See* U.S. Sentencing Comm'n, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 192 (Feb. 1995); *see also* U.S. Sentencing Comm'n, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 8 (Apr. 1997); U.S. Sentencing Comm'n, *Report to the Congress: Cocaine and Federal Sentencing Policy* 102-03 (May 2002) ("May 2002 Report"); U.S. Sentencing Comm'n, *Report to the Congress: Cocaine and Federal Sentencing Policy* B-17 to B-19, C-4 (May 2007).

The question, however, is whether such racial disparities satisfy *Hahn*'s requirement that the sentence "relied on" an impermissible factor. 359 F.3d at 1327. We do not think that it does. The 100-to-1 quantity ratio was imposed for a number of different reasons, none of them race. *See* May 2002 Report at 90 (listing reasons underlying the 1986 enactment of the 100-to-1 quantity ratio). We do not contest the Sentencing Commission's position that the implementation

of the quantity ratio more greatly impacts African-Americans across the justice system as a whole. But that does not necessarily mean that Frierson's sentence "relied on" his race. *Cf. United States v. Williamson*, 53 F.3d 1500, 1530 (10th Cir. 1995) ("We have repeatedly rejected each of the arguments necessary to find § 2D1.1 violative of equal protection."). The levels are applied regardless of an offender's race, and Frierson has presented nothing to show that an otherwise similarly-situated offender of a different race would have received a different sentence.

Frierson also argues he did not intend to waive his right to bring a § 3582(c)(2) motion based on decreased offense levels, and thus enforcing the waiver would result in a "miscarriage of justice of unintended consequences." Reply Br. at 1. This argument is not persuasive. Section 3582(c)(2) focuses on allowing modification of sentences when the Sentencing Commission later lowers a sentencing range. Therefore, missing the opportunity to seek a modified sentence because of an amended Guideline, is not an "unintended consequence" of a § 3582(c)(2) waiver, particularly in these circumstances. Given that three of the Sentencing Commission's four reports were filed well before Frierson's September 2006 guilty plea, the problems surrounding the 100-to-1 quantity ratio, and the Sentencing Commission's efforts to lower the ratio, were well-known when Frierson entered his guilty plea. Further, more than a month before the entry of the plea, the Sentencing Commission signaled its intention to continue its

examination of cocaine and federal sentencing policy within the coming year, an effort that ultimately resulted in the amendment underlying Frierson's § 3582(c)(2) motion. *See* U.S. Sentencing Comm'n, *Notice of Proposed Priorities; Request for Public Comment*, 71 Fed. Reg. 44344, 44344 (Aug. 4, 2006); *see also* U.S. Sentencing Comm'n, *Notice of Final Priorities*, 71 Fed. Reg. 56578, 56578 (Sept. 27, 2006).

In sum, accepting the § 3582(c)(2) waiver necessarily means waiving the opportunity to take advantage of whatever favorable Guidelines changes may occur. To the extent that Frierson argues it is unfair to hold him to his agreement where a subsequent amendment would have a significant impact on his sentence, we have held that appellate waivers are enforceable even though a defendant did not know exactly how the waiver might apply. *See Hahn*, 359 F.3d at 1326 (rejecting the argument that an advance waiver cannot be "knowing and voluntary" because the defendant "cannot possibly know in advance what errors a district court might make").

As for the remaining factors, the sentence did not exceed the statutory maximum and the record does not reveal that counsel was ineffective in connection with the negotiation of the waiver. There is no indication the § 3582(c)(2) waiver was unlawful or that enforcing it would seriously affect the fairness, integrity or public reputation of judicial proceedings, particularly in light of benefits he received in anticipation of the amendment to the Guidelines. His

contention that he did not receive any benefit from the pending amendment is based on incorrect calculations. The sentencing transcript shows that he was sentenced at offense level 36, not level 35 as he suggests. Sent. Tr. at 80. Accordingly, the Guideline range was 235 to 293 months, and the 220-month sentence he received reflected a downward departure of fifteen months. The Sentencing Commission estimated the amendment would lower the average crack offender's sentence by fifteen months. *Notice of Submission to Congress of Amendments to the Sentencing Guidelines Effective November 1, 2007*, 72 Fed. Reg. 28558, 28573 (May 21, 2007).[4]

The motion to enforce plea agreement is GRANTED and the appeal is DISMISSED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge

---

[4] If we were to reach the merits of this appeal, we would not fault the district court for considering prior sentencing reductions in declining to further reduce a sentence under the amended crack cocaine offense levels. It would be difficult to satisfy the commentary to Sentencing Guideline § 1B1.10, which requires the court to consider the statutory sentencing factors, without considering the length of the sentence already imposed and the reductions already applied. Sentencing Guideline § 1B1.10 thus presupposes consideration of prior sentence reductions.