**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4376

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

LEONARD OLIVER,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Orangeburg.  Margaret B. Seymour, Senior District Judge.  (5:11-cr-00453-MBS-1)

Argued:  September 15, 2017                    Decided:  December 20, 2017

Amended:  December 20, 2017

Before GREGORY, Chief Judge, WYNN, and DIAZ, Circuit Judges.

Dismissed by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Wynn and Judge Diaz joined.

**ARGUED:** Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  John David Rowell, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:**  Beth Drake, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

GREGORY, Chief Judge:

This case addresses our authority to dismiss sua sponte a criminal appeal as untimely under Federal Rule of Appellate Procedure 4(b)(1)(A). Leonard Oliver appealed his criminal conviction years after the Rule 4(b)(1)(A) filing deadline and nearly three months after the district court denied his motion to vacate the conviction under 28 U.S.C. § 2255. The Government failed to object to the appeal's untimeliness. It is now for this Court to decide whether to proceed to the merits.

We conclude that this Court has the authority to dismiss untimely criminal appeals sua sponte but that it should exercise that authority only in extraordinary circumstances. Given the procedural history of Oliver's case, we find that such extraordinary circumstances are present here and dismiss the appeal.

I.

Leonard Oliver pleaded guilty to attempt to possess with intent to distribute 500 grams or more of cocaine and was sentenced to ten years in prison, the mandatory minimum sentence for the offense given his criminal record. *See* 21 U.S.C. §§ 841(b)(1)(B), 846.[1] The district court entered its judgment on September 30, 2011. The following year, Oliver filed a timely pro se motion to vacate the conviction and sentence under 28 U.S.C. § 2255

---

[1] Sections 841(b)(1)(B) and 846 provide that a person convicted of attempt to possess with intent to distribute 500 grams or more of cocaine who had a prior, final felony drug conviction at the time of the offense shall be sentenced to a minimum of ten years and a maximum of life in prison. Oliver stipulated that he had one prior felony drug conviction that had become final.

based on three ineffective-assistance-of-counsel claims. *Oliver v. United States*, No. 5:11-435, 2014 WL 5506758, at \*2–3 (D.S.C. Oct. 29, 2014). The district court ultimately granted summary judgment in the Government's favor in March 2015. *See id.* at \*5; J.A. 9.

On June 18, 2015, Oliver filed a pro se notice of appeal, seeking to directly appeal the same conviction and sentence from September 30, 2011. This Court assigned counsel, who then filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). The Government notified this Court that it would not file a response brief. Oliver was informed of his right to file separately but did not do so.

## II.

The time for filing an appeal from a criminal judgment is governed by Federal Rule of Appellate Procedure 4(b). The Rule requires that "a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A).

Without question, Oliver's appeal is years late. The judgment was entered on September 30, 2011. To comply with Rule 4(b)(1)(A), Oliver needed to notice his appeal by October 14, 2011. Oliver nonetheless filed the notice on June 18, 2015—three years and eight months after the deadline. We have held that when a notice of appeal is filed after the 4(b)(1)(A) deadline but within thirty days of that deadline, district courts should determine whether the late filing was due to "excusable neglect or good cause" under Rule 4(b)(4). *See United States v. Reyes*, 759 F.2d 351, 353 (4th Cir. 1985). Given that Oliver's

3

notice was far more than thirty days late, however, Rule 4(b)(4)'s extension of time to file for excusable neglect or good cause is no help to him.

We note at the outset that Oliver's failure to adhere to Rule 4(b)(1)(A)'s filing deadline does not deprive this Court of subject-matter jurisdiction. *See United States v. Urutyan*, 564 F.3d 679, 685 (4th Cir. 2009). Rather, Rule 4(b)(1)(A) is an inflexible claim-processing rule. *See id.* (explaining that Rule 4(b) is judicially created and "not backstopped by any federal statutory deadline"); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) ("A time limit not prescribed by Congress ranks as a mandatory claim-processing rule, serving 'to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'" (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011))). When the Government promptly invokes the rule in response to a late-filed criminal appeal, we must dismiss. *See Eberhart v. United States*, 546 U.S. 12, 18 (2005) (per curiam) (discussing Rule 4(b)'s predecessor, Federal Rule of Criminal Procedure 37); *see also Rice v. Rivera*, 617 F.3d 802, 810 (4th Cir. 2010) ("Claim-processing rules . . . are to be rigidly applied when invoked by a litigant."). But, if the Government fails to object promptly to an appeal's untimeliness in either its merits brief or an earlier motion to dismiss, it generally forfeits the right to do so. *See Eberhart*, 546 U.S. at 18; *see also Kontrick v. Ryan*, 540 U.S. 443, 458 (2004) (noting that time bars generally must be raised in answer or responsive pleading); *United States v. Reyes-Santiago*, 804 F.3d 453, 459 (1st Cir. 2015) (denying Government's motion to dismiss appeal under Rule 4(b)(1)(A) because motion was filed after merits brief and Government had not previously raised untimeliness issue). Here, the Government did not

4

seek dismissal of Oliver's appeal as untimely until well after the merits briefing, and it has provided no justification for the delay.[2] We therefore have no obligation to raise Rule 4(b) on our own motion or to dismiss the appeal in this case.

## III.

The question then becomes whether we even have the authority to invoke Rule 4(b) sua sponte. It is well-settled that "[c]ourts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823 (1996). Inherent powers are those "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Moussaoui*, 483 F.3d 220, 236 (4th Cir. 2007) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). The Supreme Court has thus recognized federal courts' inherent authority to vacate a judgment procured by fraud, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), to dismiss a lawsuit for failure to prosecute, *see Link*, 370 U.S. at 631–32, to stay an action pending the outcome of parallel proceedings in another court, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), and to assess attorney's fees against counsel, *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980), among other actions. The

---

[2] Local Rule 27(f) appears to countenance such action, as it provides, "Motions to dismiss based upon . . . procedural grounds may be filed at any time." While we think forfeiture is appropriate here, notwithstanding our Local Rule, we need not decide that question because (as we explain) we have inherent authority to dismiss the appeal and choose to exercise it.

5

source of such inherent power is not a particular rule or statute but "the very nature of the court as an institution." *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461–62 (4th Cir. 1993).

Accordingly, we have held that a court may independently consider an issue not raised by the parties when necessary to protect important institutional interests. In *Clodfelter v. Republic of Sudan*, we affirmed a district court's sua sponte invocation of a res-judicata defense to avoid the unnecessary expenditure of judicial resources where the defendant, a foreign sovereign, had not appeared in the case. 720 F.3d 199, 209–10 (4th Cir. 2013). In *Nasim v. Warden, Maryland House of Correction*, we recognized that where a complaint filed in forma pauperis under 28 U.S.C. § 1915(d) is untimely on its face, the district court may raise a statute-of-limitations defense on its own motion. 64 F.3d 951, 953–54, 956 (4th Cir. 1995) (en banc). Because complaints filed under section 1915(d) are more likely to be "frivolous, malicious, or repetitive," we reasoned that such authority was necessary to prevent the court's docket from becoming clogged with meritless claims. *Id.* at 953–54. And, in *Hill v. Braxton*, we concluded that a federal habeas court may also consider a statute-of-limitations defense sua sponte because petitions brought under 28 U.S.C. § 2254 "implicate considerations of comity, federalism, and judicial efficiency to a degree not present in ordinary civil actions." 277 F.3d 701, 705–06 (4th Cir. 2002).

Like meritless complaints and untimely habeas petitions, late-filed criminal appeals can implicate significant judicial interests. Most notably, they disrupt the finality of criminal judgments. A criminal conviction becomes final at the end of the appellate process—i.e., when the time for a direct appeal expires and the defendant has not noticed

6

an appeal or, if the defendant pursues an appeal, when the time for filing a petition for certiorari expires. *See United States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001). Once final, that judgment is presumptively valid and can serve as the basis for future proceedings and judgments. *See United States v. Frady*, 456 U.S. 152, 164–65 (1982). For example, a final conviction—and only a final conviction—can be collaterally reviewed. *See* 28 U.S.C. § 2255(f). And, a final conviction may subject the defendant to sentencing enhancements should he or she be convicted of another crime. *See, e.g.*, 21 U.S.C. § 841(b)(1)(B) (providing that person who commits enumerated drug offense shall be sentenced to no less than five years in prison, but if that person "commits such a violation after a prior conviction for a felony drug offense that has become final, such person shall be sentenced to a term of imprisonment no less than 10 years"). Reviewing the merits of an appeal filed after the Rule 4(b) deadline reopens the appellate process and thereby makes what was a final judgment no longer final. When an appeal is filed so late that another judgment in the interim has relied on the judgment being appealed, adjudication of the appeal could unravel both the underlying judgment and the intervening judgment. And unraveling intervening judgments simply creates further channels of litigation that would not have been available but for the defendant's delay. Courts clearly have a strong interest in preserving valid final judgments and not expending judicial resources on cases that upset those judgments.

Moreover, some untimely criminal appeals, if decided on the merits, would give the defendant an undeserved second bite at the apple. The federal criminal justice system prescribes a clear, sequential process for resolving criminal cases: The district court enters

7

its judgment; the defendant may challenge the judgment in an appeal to this Court and then to the United States Supreme Court; and if unsuccessful, the defendant may challenge both judgments on collateral review. *See* 18 U.S.C. § 3742; 28 U.S.C. § 2255. Filing a direct appeal after pursuing collateral relief, as Oliver has done here, thwarts this process. And a decision on the appeal's merits would unfairly allow the defendant additional judicial review not available to litigants who adhere to the rules of procedure. *See Magwood v. Patterson*, 561 U.S. 320, 331 (2010) (holding that issuance of new judgment renews right to collateral review). Needless to say, rewarding those who flout our rules threatens the integrity of our judicial system. Courts thus have a strong interest in ensuring that litigants do not gain additional opportunities for judicial review by circumventing the process.

Given the potential consequences of adjudicating untimely criminal appeals, we conclude that the power to dismiss such appeals is necessary to protect the finality of criminal judgments and the efficiency and fairness of our justice system. Therefore, we hold that this Court has the inherent authority to invoke Rule 4(b)(1)(A) sua sponte.

The two other circuits that have squarely addressed the question agree. In *United States v. Mitchell*, the Tenth Circuit held that it may raise the Rule 4(b) time bar sua sponte because the rule "implicates important judicial interests beyond those of the parties." 518 F.3d 740, 750 (10th Cir. 2008). The court noted that Rule 4(b) "plays an important role in ensuring finality of a criminal conviction" and thus serves both "societal interests and the interests of judicial administration by minimizing uncertainty and waste of judicial resources." *Id.* Relying on *Mitchell*'s reasoning, the Sixth Circuit held the same. *United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011).

8

## IV.

Having recognized that we have the inherent power to dismiss untimely criminal appeals sua sponte, we now turn to whether we should exercise it. A court's exercise of inherent power must be "a reasonable response to the problems and needs that provoke it." *Degen*, 517 U.S. at 823–24. Indeed, "inherent power is limited by the necessity giving rise to its exercise." *Id.* at 829. The necessity here is the need to protect the finality of criminal judgments and maintain the efficiency and fairness of the judicial process. Because adjudicating a late-filed criminal appeal necessarily disrupts the finality of the underlying judgment and thus jeopardizes at least the fairness of our procedures, our power to dismiss such appeals on our own motion extends to all appeals filed after the Rule 4(b)(1)(A) deadline.

But "[j]ust because" we have the inherent authority to act "does not mean that it is appropriate to use that power in every case." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1893 (2016). This is particularly true where, as here, the exercise of inherent power involves raising an issue that the parties have forfeited or waived and dismissing the case on that ground. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653–54 (4th Cir. 2006); *Shaffer Equip.*, 11 F.3d at 462. In our adversarial system, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). The importance of preserving this system and its benefits weighs heavily against considering Rule 4(b) sua sponte.

9

"Courts do not, or should not, sally forth each day looking for wrongs to right." *Id.* at 244 (internal alterations and citation omitted); *see also Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."). And for good reason—our adversarial system of justice is premised on "the well-tested principle" that party presentation is the most effective method for reaching the best outcome in each case. *Penson v. Ohio*, 488 U.S. 75, 84 (1988); *Alderman v. United States*, 394 U.S. 165, 183–84 (1969); *see also Herring v. New York*, 422 U.S. 853, 862 (1975) ("[P]artisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."). Such adversary proceedings not only increase public confidence in the justice system, *see United States v. Nixon*, 418 U.S. 683, 709 (1974), but they implicitly recognize that "parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief," *Greenlaw*, 554 U.S. at 244 (citation omitted). *See also id.* ("Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before us." (citation omitted)).

Issues "waivable by the inaction of a party," such as the untimeliness of a criminal appeal, "bear[] the hallmarks of our adversarial system." *Eriline*, 440 F.3d at 654. Indeed, the principle that parties forfeit an argument if they fail to timely raise it encourages each side to actively participate in all stages of the litigation. When the court raises a forfeited issue sua sponte, it undermines the principle of party presentation and risks becoming a

10

third advocate. *See Arizona v. California*, 530 U.S. 392, 412–13 (2000). Habitual sua sponte consideration of a forfeited issue disincentivizes vigorous advocacy and thereby chips away at the foundation of our justice system.

For these reasons, we have warned that courts should not invoke a statute of limitations sua sponte unless proceeding to the merits would significantly implicate the efficiency and integrity of the judicial process. In *Eriline Co. S.A. v. Johnson*, the plaintiffs filed their complaint nearly a year after the relevant statute of limitations had run. 440 F.3d at 650–51. Because certain defendants failed to respond, the plaintiffs moved for default judgment. *Id.* at 651. Finding that the case was time-barred, the district court raised the statute-of-limitations defense sua sponte and dismissed the complaint in its entirety. *Id.* We held on appeal that the dismissal was an unjustified departure from the general rule that a defendant must either timely raise a statute of limitations or forfeit its protection. *Id.* at 657. A statute of limitations, we reasoned, "primarily serves only defendants" and any interest that a court possesses in its enforcement "ordinarily falls short of that necessary to outweigh the benefits derived from adhering to the adversarial process." *Id.* at 655.

We find our reasoning in *Eriline* instructive here. *Eriline* made clear that courts are not to intervene in the adversarial process solely because a party filed late. *See* 440 F.3d at 655–57. Rather, the defendant holds the responsibility of raising a statute of limitations, as it is the defendant who primarily benefits from its invocation. *Id.* at 653–54. Only when consideration of a statute of limitations primarily benefits the judicial system may the court raise that time bar on its own motion. *Id.* at 655–56. Indeed, we recognized in *Eriline* that a court may raise a statute of limitations sua sponte in only two narrow circumstances:

11

untimely complaints filed in forma pauperis under 28 U.S.C. § 1915 and untimely habeas petitions filed under 28 U.S.C. § 2254. *Id.* at 655–57 (discussing *Nasim*, 64 F.3d 951, and *Hill*, 277 F.3d 701). These cases are exceptional in that they "implicate important judicial and public concerns not present in the circumstances of ordinary civil litigation"—namely, preventing the court's docket from becoming clogged with meritless claims and considerations of comity, federalism, and judicial efficiency. *Id.* at 656.

Our decision in *Eriline* thus struck a balance between courts' interest in maintaining the adversarial process and the institutional interests implicated by these two types of filings. When dismissal primarily benefits the defendant, the interest in preserving our adversarial system is paramount, and the court should not consider the statute of limitations sua sponte. *See id.* at 655. But, in some cases, deciding a complaint or petition on the merits implicates important judicial interests to such an extent that the court's interest in dismissing the case outweighs its interest in adhering to the adversarial process. *See id.* at 655–56. In those cases, and only those cases, the court may raise the statute of limitations on its own motion. *See id.* at 657.

The same weighing of interests applies to determining whether or when we should invoke Rule 4(b)(1)(A). Here, the Government holds the responsibility of raising the untimeliness of a criminal appeal, and generally, the Government enjoys the greatest benefit when criminal appeals are dismissed on untimeliness grounds. If the Government neglects to object to a late-filed criminal appeal, we must not rush to its aid. Indeed, we should assume that the Government wishes the court to decide the case on the merits. *See Greenlaw*, 554 U.S. at 244. There are, however, some circumstances in which this Court's

12

interests in dismissing an untimely criminal appeal supersede the interests of the parties and the principle of party presentation. Consistent with our decision in *Eriline*, we think that in those instances, and only those instances, this Court should exercise its inherent authority to consider Rule 4(b)'s filing deadline sua sponte.

Two circumstances in particular threaten the judiciary's institutional interests to such an extent that intervening in the adversarial process by raising a forfeited or waived Rule 4(b) defense is necessary. The first is an appeal from a final judgment filed so late that in the interim, a court has issued a subsequent judgment, such as a sentence enhancement, in reliance on the judgment appealed. As we discussed above, adjudication of such an appeal on the merits has a domino effect—it disrupts not only the judgment appealed, but also the subsequent judgment. And disrupting the latter judgment would create new grounds to challenge that judgment, grounds that would not exist but for the defendant's untimely appeal.

The following hypothetical best illustrates the problem: An individual is convicted and sentenced for a felony drug offense and does not file an appeal within the time provided by Rule 4(b). That judgment becomes final when the Rule 4(b) filing period expires. The same individual later commits and is convicted of attempt to possess with intent to distribute 500 grams or more of cocaine under 21 U.S.C. §§ 841(b)(1)(B) and 846—the offense in Oliver's conviction. Section 841(b)(1)(B) provides, "If any person commits such a violation *after a prior conviction for a felony drug offense has become final*, such person shall be sentenced to a term of imprisonment which may not be less than 10 years." 21 U.S.C. § 841(b)(1)(B) (emphasis added). Thus, the court, relying on the finality of the

13

first felony drug conviction, sentences this individual to ten years in prison for the cocaine offense. Then the individual, now serving ten years in prison, appeals the first felony drug conviction, and the Government does not object to the appeal's untimeliness. If this Court proceeds to the merits of that appeal, it reopens the underlying felony drug conviction, making that judgment no longer final. And because that conviction is no longer final, the ten-year sentence issued in reliance on it becomes subject to challenge. Although our interest in respecting the adversarial process is substantial, opening the courthouse doors to these otherwise unavailable claims would waste judicial resources and allow those who disregard Rule 4(b)'s filing deadline to free themselves of valid and binding judgments.

The second circumstance that warrants sua sponte invocation of Rule 4(b) is a direct appeal filed after the defendant has completed collateral review of the same judgment. Such appeals circumvent the established process that our criminal justice system prescribes for resolving cases. A defendant can seek collateral review of a criminal judgment—i.e., file a petition for habeas corpus—only after that judgment has become final. Thus, in collaterally reviewing a criminal judgment, a district court relies on the fact that the defendant has exhausted all opportunities for direct review. *See Frady*, 456 U.S. at 164–65. Reviewing an appeal post-collateral review not only nullifies the district court's efforts in adjudicating the habeas petition, but also restarts the process such that the defendant gains a second opportunity for collateral review. *See Magwood*, 561 U.S. at 331. As important as the principle of party presentation is, we cannot allow litigants to turn the review process on its head and obtain additional judicial review by disregarding Rule 4(b)'s mandate.

14

Accordingly, we hold that, as a general rule, this Court should not invoke Rule 4(b)(1)(A) to dismiss an untimely criminal appeal when the Government has forfeited or waived its objection. The untimeliness of a criminal appeal does not by itself justify contravening the principle of party presentation so basic to our adversarial system. We recognize, however, that certain cases implicate judicial interests to such an extent that not intervening would harm the court as an institution. Specifically, appeals filed after a subsequent judgment has relied on the judgment appealed or after the defendant has pursued collateral review of the judgment threaten the efficiency and integrity of our justice system to such an extent that this Court's interest in dismissing them outweighs its interest in adhering to the adversarial process. In these cases, the Court may exercise its inherent power to raise Rule 4(b)(1)(A) sua sponte.[3]

The parties focused much of their supplemental briefing in this case on the Tenth Circuit's opinion in *Mitchell*, 518 F.3d 740. There, the Tenth Circuit held that courts may raise Rule 4(b) sua sponte when the delay in filing the appeal has been inordinate and judicial resources and administration are implicated. *Id.* at 750. We, however, find *Mitchell*'s test untenable. As the dissent in that case noted, "inordinate" delay is an inherently ambiguous standard and begs the question of where to draw the line between appeals that are late and those that are too late. *Id.* at 754 (Lucero, J., dissenting). Similarly, it is unclear to us how courts should measure whether a case implicates judicial

---

[3] We do not foreclose the possibility that additional circumstances might necessitate sua sponte consideration of Rule 4(b)(1)(A). Such an exercise of inherent power, of course, would need to be tethered to the principles articulated herein. Given the weighty importance of preserving the adversarial process, we think such cases will be rare.

15

resources and administration to the extent that it should be dismissed without wading knee-deep in the merits. And, assuming we did identify those resource-intensive cases, such a standard would have us dismiss cases that raise numerous potentially meritorious issues yet adjudicate cases that raise fewer issues or issues we can dispense with more easily. We think the better approach is to refrain from considering Rule 4(b) sua sponte unless an intervening judgment or collateral-review proceeding has relied on the judgment appealed.

V.

In this case, Oliver filed his notice of appeal more than three years and eight months after the district court entered the underlying judgment. Because Oliver chose not to appeal within the time provided by Rule 4(b)(1)(A), that judgment became final. Thereafter, Oliver pursued collateral review of the judgment under 28 U.S.C. § 2255. The district court that adjudicated his habeas petition proceeded on the valid presumption that the conviction was no longer appealable and concluded that his habeas claims were without merit. *See Oliver*, 2014 WL 5506758, at \*5; J.A. 9.

Having been unsuccessful in obtaining relief on collateral review, Oliver now asks this Court to reopen his original conviction and conduct our own review. This we will not do. Oliver's appeal presents one of the rare situations we identified, *supra* at 14, in which our interest in the efficiency and integrity of the criminal justice system outweighs our interest in adhering to the principle of party presentation. Accordingly, we exercise our authority to invoke Rule 4(b)(1)(A) sua sponte, and because there is no question that Oliver's appeal is untimely, we dismiss.

## VI.

For the foregoing reasons, we dismiss Oliver's appeal as untimely under Federal Rule of Appellate Procedure 4(b)(1)(A).

*DISMISSED*