*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-FM-2

DWIGHT G. DELOATCH, APPELLANT,

V.

ROBIN SESSOMS-DELOATCH, APPELLEE,

and

No. 20-CO-119

MARCELO F. PEREZ, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(DRB-2086-14 & CF1-23123-09)

(Hon. Peter A. Krauthamer, Trial Judge)
(Hon. William M. Jackson, Trial Judge)

(Decided June 18, 2020)

Before EASTERLY and DEAHL, *Associate Judges*, and NEBEKER, *Senior Judge*.

DEAHL, *Associate Judge*:  We have consolidated these appeals because they share dispositive issues.  In each case, a notice of appeal was filed several years late, forcing us to confront whether the time prescriptions for noting appeals in D.C. App. R. 4 ("Rule 4") are jurisdictional.  Because we hold that Rule 4's time limits are non-jurisdictional, we must further address if and when it is appropriate for us to proactively dismiss an appeal as untimely where the appellees have raised no such objection.

The Supreme Court has made clear in recent years that time limits codified only in court-made rules—such as Rule 4(a) (governing civil appeals, like the appeal filed by Dwight Deloatch) and Rule 4(b) (governing criminal appeals, like the appeal filed by Marcelo Perez)—are non-jurisdictional "claim-processing" prescriptions. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017).  This straightforward rule, that courts cannot divest themselves of statutorily conferred jurisdiction, compels the conclusion that Rule 4(a) and 4(b)'s time limitations are non-jurisdictional so that they may be "subject to forfeiture if not properly raised by the appellee." *Hamer*, 138 S. Ct. at 16.  Our past precedents to the contrary—*e.g.*, *Frain v. District of Columbia*, 572 A.2d 447, 449 (D.C. 1990) (Rule 4(a) "time limit is mandatory and jurisdictional"); *McKnight v. United States*, 764 A.2d 240, 241 (D.C. 2000) (Rule 4(b) time limits "are both

mandatory and jurisdictional")—are irreconcilable with intervening Supreme Court precedent and are no longer good law.

It follows that in the normal case, it falls first to appellees to raise any argument that a notice of appeal is untimely under Rule 4. The present appeals are not normal cases, however, as each appellant filed a notice of appeal several years out of time. This court retains some discretion to enforce claim-processing rules sua sponte. Given the substantial delays here, we exercise that discretion and dismiss both of these appeals as untimely. *See, e.g.*, *United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011) (sua sponte dismissing untimely appeal because, while defect was non-jurisdictional, dismissal was "appropriate" where notice of appeal was "over four years late"); *United States v. Oliver*, 878 F.3d 120, 122 (4th Cir. 2017) ("We conclude that this Court has the authority to dismiss untimely criminal appeals sua sponte but that it should exercise that authority only in extraordinary circumstances."); *United States v. Mitchell*, 518 F.3d 740, 751 (10th Cir. 2008) (declining to dismiss sua sponte appeal that was filed one day late).

## I.

In the first consolidated case, the trial court issued a judgment of absolute divorce settling various claims between Dwight G. Deloatch and his former wife,

Robin Sessoms-Deloatch, in May 2015. It then denied Mr. Deloatch's motion to vacate the judgment on March 30, 2016. In January 2020, Mr. Deloatch noted an appeal from the underlying judgment. This court issued an order directing him to show cause why the appeal should not be dismissed as untimely where it was filed nearly four years after the time permitted by Rules 4(a)(1) and 4(a)(4)(A)(iii). *See* Rule 4(a)(1) ("The notice of appeal in a civil case must be filed . . . within 30 days after entry of the judgment or order from which the appeal is taken . . . ."); Rule 4(a)(4)(A)(iii) ("the time to file an appeal runs" from denial of motion "to vacate" the judgment). Mr. Deloatch failed to respond.

In the second case, Mr. Perez pled guilty to first-degree child sexual abuse, and a judgment was entered in November 2011. He moved to withdraw his guilty plea, but on August 31, 2012, the trial court denied that motion because Mr. Perez expressly abandoned it. Mr. Perez noted an appeal from that decision in February 2020, making his appeal more than seven years out-of-time under the applicable Rule 4(b). *See* Rule 4(b)(1) ("A notice of appeal in a criminal case must be filed with the Clerk of the Superior Court within 30 days after entry of the judgment or order from which the appeal is taken . . . ."). This court issued an order to show cause why the appeal should not be dismissed as untimely. Mr. Perez responded but, suffice it to say, he offered no adequate explanation for waiting seven-plus years

to raise a challenge to the August 2012 denial of his motion to withdraw his guilty plea.[1]

## II.

We first determine whether we have jurisdiction to entertain these appeals. *See Murphy v. McCloud*, 650 A.2d 202, 203 n.4 (D.C. 1994) ("[W]here a substantial question exists as to this court's subject matter jurisdiction, it is our obligation to raise it, *sua sponte . . . .*"). Under Rule 4(a), an appeal in a civil case must generally be filed within thirty days of the challenged judgment's entry. The same thirty-day deadline applies to appeals from criminal cases under Rule 4(b).[2] The appeal is thus nearly four years late in Mr. Deloatch's case, and more than seven years late in Mr. Perez's case.

---

[1] Mr. Perez's response makes clear that he is not challenging the August 2012 ruling regarding his claim that counsel failed to investigate his case, but instead wants to press a separate claim never ruled upon by the trial court, namely that he directed his counsel to file a notice of appeal and that counsel failed to do so. *See generally Garza v. Idaho*, 139 S. Ct. 738 (2019). Whatever the merits of that claim, we cannot review it in the first instance. *Washington v. United States*, 834 A.2d 899, 906 n.16 (D.C. 2003).

[2] Rules 4(a) and 4(b) contain exceptions to those time prescriptions—*see* Rule 4(a)(5) (governing extensions), 4(b)(4) (same), and 4(a)(7) (permitting the Superior Court to reopen the time to appeal under certain conditions)—but they are not implicated here.

We have previously held that failing to satisfy Rule 4's time limits divests this court of jurisdiction, as we have stated that the time requirements in both Rule 4(a) and Rule 4(b) are "mandatory and jurisdictional." *See Frain*, 572 A.2d at 449 (Rule 4(a) civil appeal); *McKnight*, 764 A.2d at 241 (Rule 4(b) criminal appeal). Those holdings hewed closely to how the Supreme Court had, at one point in time, described various rule-based filing deadlines. For instance, in *Frain*, we relied primarily upon *Browder v. Director, Department of Corrections*, 434 U.S. 257 (1978), which described federal Rule 4 as "mandatory and jurisdictional."[3] *Frain*, 572 A.2d at 449 (citing *Browder*, 434 U.S. at 264). Likewise in *McKnight*, we relied on authority that traces back to the Supreme Court's opinion in *United States v.*

---

[3] *Browder* was discussing Rule 4's thirty-day time limit alongside the thirty-day time limit codified by federal statute. *Browder*, 434 U.S. at 264 ("Under Fed. Rule App. Proc. 4(a) and 28 U.S.C. § 2107, a notice of appeal in a civil case must be filed within 30 days of entry of the judgment or order from which the appeal is taken. This 30-day time limit is 'mandatory and jurisdictional.'"). Unlike court-made rules, statutory time limits are sometimes jurisdictional, at least when "the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)); *see also United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015) (statutory time bars "cabin a court's power only if Congress has 'clearly stated' as much"); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153–54 (2013) (citing *Arbaugh*, 546 U.S. at 515–16). They may also do so, at least as between Article III courts, when the statutory time prescription at issue "govern[s] the transfer of adjudicatory authority from one Article III court to another." *Hamer*, 138 S. Ct. at 20.

*Robinson*,[4] which proclaimed that "the filing of a notice of appeal within the 10-day period prescribed by Rule 37(a)(2) is mandatory and jurisdictional." 361 U.S. 220, 224 (1960).

That would normally be the end of the matter. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (explaining that "no division of this court will overrule a prior decision of this court," reserving such reconsideration for the "court en banc") (footnote omitted). We as a division would usually be bound by *Frain* and *McKnight*, which held (respectively) that Rule 4(a) and Rule 4(b)'s time limits are jurisdictional. But in the years following those opinions, the Supreme Court has taken direct aim at their underpinnings and offered a course correction. It has acknowledged its own "less than meticulous" use of the word jurisdictional in cases like *Robinson* and *Browder*. *See Kontrick*, 540 U.S. at 454 (citing *Robinson* as exemplifying the Supreme Court's own past imprecisions); *Hamer*, 138 S. Ct. at 21 n.11 (noting that *Robinson* "mistakenly suggested that a claim-processing rule was 'mandatory and jurisdictional'"); *Arbaugh*, 546 U.S. at 510 (admitting the Supreme Court has "sometimes been profligate" in its use of the word "jurisdictional," and

---

[4] In describing Rule 4 as "mandatory and jurisdictional," *McKnight*, 764 A.2d at 241, relied on *United States v. Jones*, 423 A.2d 193, 196 (D.C. 1980), which relied on *West v. United States*, 346 A.2d 504, 506 (D.C. 1975), which in turn relied on the language quoted above from *Robinson*, 361 U.S. at 224.

highlighting *Robinson* as an example). It has clarified, repeatedly and in no uncertain terms, that "a time limit prescribed only in a court-made rule . . . is not jurisdictional; it is, instead, a mandatory claim-processing rule subject to forfeiture if not properly raised by the appellee." *Hamer*, 138 S. Ct. at 16; *see also Kontrick*, 540 U.S. at 454 (diagnosing its own mistakes of "describ[ing] emphatic time prescriptions in rules of court" as "jurisdictional"). The reason for that, the Court explained, is that only the legislature can alter a court's basic jurisdiction. *Kontrick*, 540 U.S. at 452 ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); *Hamer*, 138 S. Ct. at 17 ("A time limit not prescribed by Congress ranks as a mandatory claim-processing rule . . . ."). While a court might constrain itself via court-made rules, it can also free itself of its self-imposed constraints so that they are, by their nature, non-jurisdictional restrictions.

This is not the first time that we have reversed course to acknowledge that time limits in court-made rules are non-jurisdictional. In *Smith v. United States*, we held that Superior Court Criminal Rule 35(b)'s 120-day time limit for seeking a reduction of a sentence is non-jurisdictional. 984 A.2d 196, 200 (D.C. 2009). While we had previously held to the contrary,[5] *Smith* acknowledged that intervening

---

[5] *Brown v. United States*, 795 A.2d 56, 61 n.2 (D.C. 2002); *Littlejohn v. United States*, 749 A.2d 1253, 1258 (D.C. 2000).

Supreme Court precedents substantially undermined those prior holdings and established the clear tenet that "court-promulgated rules" are "not jurisdictional and can be relaxed by the Court in the exercise of its discretion." *Id.* (quoting *Bowles v. Russell*, 551 U.S. 205, 211–12 (2007)).

Likewise in *Mathis v. District of Columbia Housing Authority*, we held that D.C. App. R. 15's deadline for filing a petition for review of an agency order is non-jurisdictional and noted that the rationale behind prior precedent to the contrary had been debunked. 124 A.3d 1089, 1102–03 (D.C. 2015) (abrogating *Capitol Hill Restoration Soc'y v. District of Columbia Mayor's Agent for Historic Pres.*, 44 A.3d 271 (D.C. 2012)). That was true even though Rule 15 had some statutory backing:[6] D.C. Code § 2-510(a) (2016 Repl.) states that petitions for agency review "shall be

---

[6] As explained *supra* note 3, statutes can divest courts of jurisdiction in a way that court-made rules cannot. Even so, we have taken a piecemeal approach to evaluating court-made rules in cases like *Smith* and *Mathis*, and we follow the same approach today, opining only that the particular time prescriptions in Rule 4 are non-jurisdictional. There notably are clear statutory time prescriptions for filing certain types of appeals, and we express no opinion as to whether those are jurisdictional because they are not implicated here. *See, e.g.*, D.C. Code § 17-307(b) (2012 Repl.) (providing that to appeal "judgments of the Small Claims and Conciliation Branch of the Superior Court," parties must submit an application to allow such an appeal within three days); D.C. Code § 50-1301.04(b) (2014 Repl.) (providing "30 days" to file an application to appeal a "denial, revocation, or suspension" of motor vehicle registration).

filed . . . within such time as" prescribed by court rule. No matter, we held, because that statutory prescription evinces "no position on issues of timeliness and delegates all decisions about timeliness to our court." *Mathis*, 124 A.3d at 1103. The same is true here, as the relevant statutory prescription leaves it to us to determine the deadlines for noting appeals, if we see fit to impose any deadlines at all. *See* D.C. Code § 17-307(a) (2012 Repl.) ("[T]he time during which an appeal may be taken . . . *may* be fixed by rules of the District of Columbia Court of Appeals.") (emphasis added).[7]

The inescapable conclusion is that the jurisprudential basis for *Frain* and *McKnight* has been substantially undermined by a swath of intervening Supreme Court precedents, headlined by *Kontrick* and *Hamer*, which demonstrate why Rule

---

[7] For the same reason, the statutory prescription that this court "shall conduct its business according to the Federal Rules of Appellate Procedure unless the court prescribes or adopts modifications of those Rules" cannot be viewed as a jurisdictional command. D.C. Code § 11-743 (2012 Repl.); *see also* D.C. Code § 11-946 (instructing that the Superior Court should likewise conduct itself according to Federal Rules "unless it prescribes or adopts" modifications to them). This provision expressly permits us to deviate from the federal rules and the pertinent federal Rule 4 is itself of no jurisdictional import. *Hamer*, 138 S. Ct. at 21-22. Nor could D.C. App. R. 26(b)(1)'s prescription that we may not extend the time for filing an appeal be jurisdictional, because that too is a court-made rule, and just as we may free ourselves from the self-imposed constraints of Rule 4, we can likewise unbind ourselves from the self-imposed constraints of Rule 26. Stacking one non-jurisdictional constraint upon another does not somehow give rise to a jurisdictional Voltron with powers exceeding the sum of its constituent parts.

4(a) and Rule 4(b)'s time prescriptions are, by themselves, non-jurisdictional. We thus have jurisdiction to entertain these late-filed appeals.

## III.

That we have jurisdiction to entertain these appeals does not require us to do so. As we have noted, Rule 4 is what is described as a mandatory claim-processing rule. *See Hamer*, 138 S. Ct. at 17. Such rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). "Filing deadlines . . . are quintessential claim-processing rules." *Id*. When a mandatory claim-processing rule is "properly invoked" by a party, it "must be enforced" by the court. *Hamer*, 138 S. Ct. at 17. However, claim-processing rules are also "subject to forfeiture if not properly raised by the appellee." *Id.* at 16; *see also Neill v. District of Columbia Pub. Emp. Relations Bd.*, 93 A.3d 229, 238 (D.C. 2014); *Smith*, 984 A.2d at 199 (citing *Eberhart v. United States*, 546 U.S. 12, 19 (2005)).

Neither appellee has objected to the untimeliness of the present appeals, though that can hardly be counted against them given this court's longstanding practice of doing that work for appellees. For decades our precedents dictated that

Rule 4 deadlines were jurisdictional and, as a result, we as a court had an obligation to steadfastly police those deadlines. It has thus been our court's practice to sua sponte issue orders directing appellants to show cause why appeals should not be dismissed whenever we detected an apparently late notice of appeal. Parties may have understandably grown reliant on that practice. While any change in this court's practice of issuing show cause orders is a topic for another day, it is fair to say that it is a live issue and any appellee who detects an untimely notice of appeal would be well-advised to move to dismiss it as untimely, *see* D.C. App. R. 13, 27, rather than assuming our current practice will endure as is.

The question remains (regardless of whether a show cause order has issued), having held Rule 4's time limits non-jurisdictional, when should we take the initiative to dismiss an appeal as untimely where no party is asking us to do so?[8] Our rules provide that we "sua sponte or upon motion of the appellee . . . may dismiss an appeal for failure to comply with a rule of this court." D.C. App. R. 13(a). We are thus expressly empowered to dismiss appeals for failure to comply with Rule 4's deadlines regardless of whether any party is requesting we do so. When to take that

---

[8] We recently noted this open question, deferring its resolution for a case that presented it. *Baldwin v. District of Columbia Office of Emp. Appeals*, 226 A.3d 1140, 1144 (D.C. 2020).

proactive initiative, and when to refrain, is a thornier question guided by competing interests.

On the one hand, and in favor of dismissing these appeals, is the interest in the orderly administration of justice and the "deep-seated interest in promoting the finality of judgments." *Siddiq v. Ostheimer*, 718 A.2d 145, 147 (D.C. 1998) (internal quotation marks omitted); *see also Clement v. District of Columbia Dep't of Human Servs.*, 629 A.2d 1215, 1218 (D.C. 1993) (surveying the importance of finality in various contexts). To permit a litigant to sit on their right to appeal for several years and then reinstitute dormant litigation by noting an appeal would frustrate that interest, jeopardize "the fairness of our procedures," and unnecessarily burden the courts.[9] *Oliver*, 878 F.3d at 126. We have described this need for finality as a

---

[9] Of special concern are cases where appellees are unrepresented and might not think to raise Rule 4's time limits as a defense to reinitiating litigation that has gone stale over the years. We should be particularly mindful of that concern in this court, where "[i]n 2017, the D.C. Court of Appeals saw *pro se* participation at the time of filing ranging from 50% to 90% depending on case type." *See* District of Columbia Access to Justice Commission, *Delivering Justice: Addressing Civil Legal Needs in the District of Columbia* at 4 (2019), https://www.dcaccesstojustice.org/assets/pdf/Delivering_Justice_2019.pdf https://perma.cc/BP2W-3SHA. Indeed, Ms. Sessoms-Deloatch did not have a lawyer in the divorce proceedings that Mr. Deloatch now seeks to upend. This concern can of course cut both ways, as appellants are also frequently uncounseled and a lack of representation is surely at the root of many late notices of appeal. We focus on unrepresented *appellees* in this footnote only because this paragraph focuses on reasons favoring this Court's sua sponte intervention, rather than those cutting against it.

"fundamental principle of litigation that has been stressed in a variety of contexts." *Clement*, 629 A.2d at 1218.

On the other hand, in favor of allowing the appeals to proceed, is the fact that ours is fundamentally an adversarial system and "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *see also Vergara v. City of Chicago*, 939 F.3d 882, 885–86 (7th Cir. 2019) (noting federal Rule 4(a) is non-jurisdictional and must be enforced when "properly invoked," but stressing that "the 'properly invoked' qualifier is important, for a litigant may forfeit the benefit of these rules") (cleaned up).  Where no party has raised an objection, as here, "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Rose v. United States*, 629 A.2d 526, 536-37 (D.C. 1993) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)).

We find the balance tips in favor of dismissal of these appeals given the substantial delays in filing the present notices of appeal.  Perhaps a slight or moderate delay in filing a notice of appeal would not warrant this court's sua sponte intervention, but we adopt the view of those federal circuit courts that have found

that at least a substantial delay does. *See Gaytan-Garza*, 652 F.3d at 681 (finding sua sponte dismissal "appropriate here, as Gaytan-Garza's delay of over four years in filing his appeal implicates the important judicial interests of finality of convictions and efficient administration of claim processing"); *Mitchell*, 518 F.3d at 750 (timeliness of criminal appeal should not be raised sua sponte "when judicial resources and administration are not implicated and the delay has not been inordinate").[10]

We do not attempt to draw a line as to when an appeal is filed so late as to merit our sua sponte intervention, as that is "a task best resolved according to the varying circumstances of each case." *Mitchell*, 518 F.3d at 750 n.13. To provide some guideposts, we note that the United States Court of Appeals for the Sixth Circuit in *Gaytan-Garza* found that a notice of appeal filed "over four years late" merited sua sponte dismissal. 652 F.3d at 680. On the other side of the ledger, the

---

[10] One federal circuit court has articulated a narrower view of when sua sponte dismissal of untimely appeals is appropriate. The United States Court of Appeals for the Fourth Circuit has indicated, albeit in what is arguably dicta, that it will dismiss criminal appeals as untimely on its own motion only under limited circumstances where the judiciary's institutional interests outweigh the interest in adversarial party presentation. *Oliver*, 878 F.3d at 128 (choosing to raise timeliness where, for example, "a court has issued a subsequent judgment . . . in reliance on the judgment appealed" or "the defendant has completed collateral review of the same judgment").

United States Court of Appeals for the Tenth Circuit found that "it would be inappropriate to raise *sua sponte* the timeliness of [a] notice of appeal" that was only one day late. *Mitchell*, 518 F.3d at 751. While there is several years' worth of daylight between these guideposts, these appeals—noted nearly four years late in Mr. Deloatch's case and more than seven years late in Mr. Perez's case—fall on the *Gaytan-Garza* side of the ledger. They involve substantial delays that warrant sua sponte dismissal. Any further refinement of how late is so late as to warrant our intervention is better left to case-by-case adjudication or the rulemaking process.[11]

In the case of more negligible delays, it would be hazardous for parties to rely on our sua sponte action; they instead should raise their own objections whenever an appeal is untimely. See *supra* n. 8. As we have already noted, mandatory claim-processing rules like Rule 4 "must be enforced" when properly invoked by the appellee, *Hamer*, 138 S. Ct. at 17,[12] and an appellee is free to assert the untimeliness

---

[11] We do not mean to suggest that the length of delay is the only relevant consideration in determining when this court's sua sponte intervention is warranted. While we have no occasion to enumerate what other considerations should be taken into account in future cases, one could at least argue that relevant considerations include any explanation offered for the delay and the underlying merits of the appeal, among other possible criteria that we do not endeavor to catalog here.

[12] *Hamer* expressly reserved the question of "whether mandatory claim-processing rules may be subject to equitable exceptions." 138 S. Ct. at 18 n.3 (citing *Kontrick*, 540 U.S. at 457).

of an appeal under Rule 4 via a motion to dismiss as early as the moment a notice of appeal is filed, *see* D.C. App. R. 13(a), 27. We do not believe that such case-by-case adjudication will waste this court's and the litigants' time and resources. Appellees concerned with their own resources will no doubt act promptly and move to dismiss appeals that are late filed before they enter the fray of the merits. When they fail to do so, they can hardly complain about a resource strain that they visited upon themselves through their own inaction. As for the court's resources, it seems just as likely that taking ourselves out of the business of proactively policing appeals that are only slightly untimely will conserve court resources. Whatever doubts there are about that prediction are outweighed by the core tenet of our adversarial system that we generally place the onus on litigants, rather than the court, to raise their claims.[13] *See Greenlaw*, 554 U.S. at 243; *Randolph v. United States*, 882 A.2d 210,

---

[13] This court might also promulgate a rule requiring appellees to raise any Rule 4 timeliness objections at some particular point, upon risk of forfeiture. That would eliminate any guesswork about when appellees must raise a Rule 4 timeliness challenge—be it within some number of days of the notice of appeal, at any time before merits briefing, in the merits briefing itself, before a decision is issued, or before the mandate is issued—in order for it to be considered "properly invoked" such that it "must be enforced" by the court. *Hamer*, 138 S. Ct. at 17. That would also advance the goal of resolving the timeliness of appeals at their outset without treading upon the adversarial bedrock that we generally will not entertain non-jurisdictional arguments that the parties themselves have not raised. We do not intend anything in this opinion to preclude any future rules amendments to address how this court will treat untimely appeals.

223 (D.C. 2005).  That maxim will bend in some cases, like this one, but we will not discard it entirely in the name of some perceived but uncertain efficiency.

**IV.**

We dismiss these appeals as untimely.

*So ordered.*